## No. 25763

The City and County of Denver, Colorado, a Municipal Corporation, and the Department of Welfare of the City and County of Denver v. The Juvenile Court in and for the City and County of Denver in the Second Judicial District, and the Honorable John Robert Evans, the Presiding Judge thereof

(511 P.2d 898)

Decided July 2, 1973.                    Rehearing denied July 30, 1973.

158

Max P. Zall, City Attorney for the City and County of Denver, Frank A. Elzi, Assistant, Robert A. Powell, Assistant, for petitioners.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Gary B. Blum, Assistant, for respondents.

Lynne M. Hufnagel, Attorney, Amicus Curiae for Juvenile Advocacy Division Legal Aid Society of Metropolitan Denver.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This matter is here on a "Petition for a Writ in the Nature of Prohibition" filed by the City and County of Denver and the Department of Welfare of the City and County of Denver, pursuant to the provisions of article VI, section 3, Constitution of Colorado, and C.A.R. 21.

Petitioners seek an order from this court directing the Juvenile Court in and for the City and County of Denver, and the Honorable John Robert Evans, the presiding judge thereof (since deceased), to vacate a certain order entered in a pending action before the court wherein R.J.G. was adjudicated a child in need of supervision (CHINS). The order in issue requires the petitioners herein to place the child, at petitioners' expense, at Brockhurst Boys' Ranch, Colorado Springs, Colorado.

We issued a rule to show cause why the relief prayed for should not be granted. In addition to the briefs filed in behalf of the parties, an amicus curiae brief has been filed by the Juvenile Advocacy Division of the Legal Aid Society of Metropolitan Denver. We conclude that the court had jurisdiction and that the rule to show cause should be discharged.

The basic issue is whether the juvenile court exceeded its jurisdiction, or lacked jurisdiction, to order the Denver Department of Welfare to return the child to a group care facility, specifically Brockhurst Boys' Ranch. The petitioners, who were before the court at the time of the original placement of the child at Brockhurst, concurred in recommending that placement.

The issues before us arose in this factual setting. R.J.G. first came to the attention of the Juvenile Court in January 1969. He was found wandering the streets of Denver and told the police that he had run away from home because of beatings by his mother. A dependency and neglect petition was filed against Mrs. G. which resulted in R.J.G.'s removal

from his mother's home and placement at Frontier Boys Ranch. In August 1970 he was returned to his mother's custody.

R.J.G. reappeared in the Juvenile Court in January 1971, following the filing of a petition in delinquency, C-42633. On April 28, 1971, the petition was amended to a Child in Need of Supervision by the referee. On April 29, 1971, R.J.G. was returned to the temporary custody of the Denver Department of Welfare and was placed in the Galloway Receiving Home. Although the child on occasion was returned to the home of his mother, the result was not satisfactory and he was eventually placed at Savio House for boys on May 13, 1971.

Due to various factors, the placement at Savio House failed to accomplish its purpose and a second dispositional hearing was held on June 28, 1972, to review the minor's situation. On that date, with the approval of all persons and agencies involved, including the Denver Department of Welfare, R.J.G. was ordered placed at Brockhurst Boys' Ranch, with the Denver Department of Welfare responsible for the financial obligation arising therefrom. The City raised no objections to any of the court's orders up to this point.

On August 5, 1972, R.J.G. ran away from Brockhurst Boys' Ranch following an incident in which, while wearing only a pair of pants, he was held against an ant hill by some of the other boys at the ranch. R.J.G. was eventually returned to Denver Juvenile Hall. A detention hearing was held on September 14, 1972, at which the court ordered the Denver Department of Welfare either to arrange for the return of R.J.G. to Brockhurst Boys' Ranch or suggest an appropriate alternative.

The Denver Department of Welfare not having returned R.J.G. to Brockhurst Boys' Ranch nor having suggested any appropriate alternative placement by October 17, 1972, the juvenile court, at the request of counsel for the child, held a hearing to review the placement situation.

Present at this hearing were the minor child, represented by a deputy state public defender; the People, represented by

an assistant district attorney; the Denver Welfare Department, represented by an assistant city attorney and a representative of the division of child services; and Mrs. Lopez, a probation counselor of the juvenile court.

Counsel for the minor moved that the court order R.J.G.'s return to Brockhurst Boys' Ranch; he advised the court that the minor desired to return there, and that the authorities at the ranch were willing to accept him.

The city attorney moved to strike the minor's motion on the ground that the court lacked jurisdiction over the person of the Welfare Department "to the extent that it can order us to place a child in a particular place." Also, at this point the city attorney stated that "We do not agree this is a proper placement." His third reason for the motion was that the City had no money allocated for this particular placement.

In its petition in this court the City has raised important questions regarding the scope of the jurisdiction of the juvenile court. The City also seeks clarification of the relationship between the Children's Code (C.R.S. 1963, Chapter 22) and the Child Welfare Services provision of 1969 Perm. Supp., C.R.S. 1963, 119-13 (Relief and Public Welfare), as they bear upon the jurisdictional issue.

## Jurisdiction

Colorado was one of the first states to adopt legislation protecting children and establishing the juvenile court as the better way to handle children in trouble. From the outset, dispositional determination was a matter left to the discretion of the court. Laws of 1881, p. 135, sec. 14; Laws of 1903, Ch. 85, p. 184, sec. 9; C.R.S. 1963, 22-8-11 and 105-1-7.

The policy governing dispositional determination is well stated in *People v. Bolton,* 27 Colo. App. 39, 146 P. 489 (1915), wherein the court said:

"In this jurisdiction it has long been held that every child is under the control of the state, and even the paternal right to its custody and control must yield to the interests and welfare of the child, and that the paramount and controlling question by which courts must be guided in proceedings

affecting the custody of the infant is the interest and welfare of the child."

In 1967 the general assembly, following an interim study by the Children's Law Committee of the Legislative Council, revised, amended and codified the laws of Colorado relating to children who are dependent, neglected, delinquent, or otherwise in need of special care, into what is known as the Colorado Children's Code. 1967 Perm. Supp., C.R.S. 1963, Chapter 22.[1]

The section of the Children's Code relating to its purposes reads:

"(b) To secure for each child, subject to these provisions, such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society;

. . . .

"(e) To secure for any child removed from the custody of his parents the necessary care, guidance, and discipline to assist him in becoming a responsible and productive member of society.

"(2) To carry out these purposes, the provisions of this chapter shall be liberally construed." 1967 Perm. Supp., C.R.S. 1963, 22-1-2(1), (b), (e), and (2).

The Children's Code leaves no room for doubt as to the general assembly's intention regarding the scope of the jurisdiction of the juvenile court. 1967 Perm. Supp., C.R.S. 1963, 22-1-4 provides:

"(1)(a) Except as otherwise provided by law, the juvenile court shall have exclusive original jurisdiction in proceedings:

. . . .

"(c) Concerning any child in need of supervision, as defined in section 22-1-3(18);

. . . .

"(e) To determine the legal custody of any child or appoint a guardian of the person or legal custodian of any child who comes within the juvenile court's jurisdiction under provi-

[1] For a comprehensive review of children's legislation in Colorado, see Colorado Legislative Council's Report to the Colorado General Assembly — *Proposed Colorado Children's Code* — Research Publication No. 111, December, 1966.

sions of this section;"

The petitioners have pointed out no exception to the juvenile court's exclusive jurisdiction over the subject matter of this controversy.

The Children's Code also contains these significant provisions which relate directly to the scope of the juvenile court's jurisdiction:

1967 Perm. Supp., C.R.S. 1963, 22-3-9(1), (2):

"Dispositional hearing. — (1) After making an order of adjudication, the court shall hear evidence on the question of the proper disposition best serving the interests of the child and the public . . . .

"(2) The court may have the child examined by a physician, psychiatrist, or psychologist, and the court may place the child in a hospital or other suitable facility for this purpose."

22-3-12(1)(a), (e), (f):

"*Child in need of supervision — disposition.* — (1)(a) When a child has been adjudicated as being in need of supervision, the court shall enter a decree of disposition, containing one or more of the following provisions *which the court finds appropriate:* (Emphasis added.)

. . . .

"(e) The court may place legal custody in the county department of public welfare or a child placement agency for placement in a foster home or child care facility, or it may place the child in a child care center.

"(f) The court may order that the child be examined or treated by a physician, surgeon, psychiatrist, or psychologist, or that he receive other special care, and may place the child in a hospital or other suitable facility for such purposes."

Taking all of these provisions into consideration in the light of history and the mandate of the general assembly that the provisions of this chapter be liberally construed, there can be no doubt that the juvenile court has the power and the duty to make such determinations as it deems appropriate regarding the custody and care of a child adjudicated to be within its exclusive jurisdiction. Of course, the court may delegate responsibility for placement. When the general assembly said that "this chapter shall be liberally

construed," it meant that it should be construed favorably to the best interests of the child and society. It is the juvenile court's responsibility to determine what that may be on a case by case basis.

Petitioners, at the outset, challenge the power of the juvenile court to order them to do anything until they have formally been made a party to the action through service of process. They argue that to hold otherwise would deprive them of due process of law under article II, section 25 of the Constitution of Colorado. Petitioners also submit that to uphold the order of the juvenile court in this case would somehow violate article III[2] of the Constitution of Colorado.

We disagree. The welfare of a child is a matter of state-wide concern;[3] hence, the Department of Welfare is, in effect, a subagency of the state under the circumstances here.[4] Therefore, it was not necessary that it be joined as an

---

[2] "The powers of the government of this state are divided into three distinct departments − the legislative, executive and judicial; and no person or collection of persons charged with the exercise of power properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted."

[3] *People ex rel. Wagner v. Torrence,* 94 Colo. 47, 27 P.2d 1038 (1933).

[4] *See* 1963 C.R.S., 119-1-13. *"Duties of the county department.* − The county department of public welfare shall be charged with the administration of all forms of public assistance in the county including home relief, indoor and outdoor care for those in need, aid to dependent children, old age assistance, aid to the blind, the care and treatment of dependent, and handicapped children, and such other welfare activities as may be delegated to it by the state department of public welfare and approved by the county board. The county department shall also investigate and pass upon all applications for admission to and discharge from county institutions which provide care and treatment for indigents. *If appointed by a court of competent jurisdiction, the director of public welfare shall perform under the supervision of such court the function of a probation officer or agent of the court in any welfare matters which may be before it."* (Emphasis added.)

independent party. Its status, functions and responsibilities are defined in the enactments of the general assembly.[5] Those enactments bring its services under the jurisdiction of the juvenile court.

█ Finally, petitioners argue that 1971 Perm. Supp., C.R.S. 1963, 119-13-1 and 1971 Perm. Supp., C.R.S. 1963, 119-13-2, indicate that the State Board of Social Services and the County Welfare Departments are to have broad discretion in the administration of child welfare services. They argue that the Department of Welfare thus has authority to disregard the order of the juvenile court in this case. Petitioners overlook 1969 Perm. Supp., C.R.S. 1963, 119-13-3, which states:

*"Coordination with other programs.* The program of child welfare services established pursuant to this article shall be coordinated with other service and assistance programs for children of this state, and shall be rendered in complement of and not in duplication of, *or contrary to, legal processes provided by the 'Colorado Children's Code'* and services rendered under any public assistance law or other law for the benefit of children, including aid to families with dependent children." (Emphasis added.)

Given our construction of the broad power of the juvenile court to make determinations as to the custody and care of a child under its jurisdiction, it would be inconsistent and contrary to the intent of the general assembly to also find such a power in the petitioners.

The questions properly raised by the petition relating to jurisdiction have been answered. All other issues raised in the petition or the briefs are not properly before us and will not be considered. C.A.R. 21(d).

The rule is discharged.

MR. JUSTICE DAY and MR. JUSTICE ERICKSON concur in the result.

[5] *See* 1967 Perm. Supp., C.R.S. 1963, 22-1-8; 1967 Perm. Supp., C.R.S. 1963, 22-2-3; 1967 Perm. Supp., C.R.S. 1963, 22-3-1, 3, 6, 8, 9, 11, 12, 13, 15, 16; C.R.S. 1963, 119-1-13; 1969 Perm. Supp., C.R.S. 1963, 119-13-3.