OPINION OF THE COURT
Matthew F. Coppola, J.
The issue before this court is one of jurisdiction. We must determine, pursuant to the provisions of the recently enacted Uniform Child Custody Jurisdiction Act (Domestic Relations Law, art 5-A) whether it would be appropriate for this court to *948 assume jurisdiction of this custody proceeding initiated by the natural mother.
The subject of this proceeding, Jeffrey P., was born on July 26, 1968. His care was given over to the respondent custodial parent shortly after his birth and he resided with her continually thereafter, the last six years in Detroit, Michigan. It appears that during this period the natural mother, petitioner herein, saw the child on but one occasion. Then, for reasons still unexplained, on June 9, 1978 she removed him from the respondent’s home and brought him to her residence in Mount Vernon, New York. On June 16, 1978, the respondent instituted a custody proceeding in the Circuit Court of Wayne County, in Detroit, Michigan, and a hearing was scheduled in that court for September 21, 1978. The petitioner mother was served in that matter on August 9, 1978. On September 11, 1978, she filed a custody petition in this court. The pendency of the Michigan action was made known to this court and pursuant to section 75-g of the Domestic Relations Law, this court apprised the Michigan court of the institution of this action and requested an exchange of information so that an appropriate determination might be had. There was no response to this inquiry. Thereafter on September 21, 1978, the mother having failed to appear, the Circuit Court of Michigan proceeded to an award of custody in favor of the respondent herein. A certified copy of the order of the Circuit Court has been filed with the clerk of this court by respondent’s counsel who now moves for a dismissal of the custody petition presently before me. Counsel contends that the issue of custody has already been decided and pursuant to article 5-A of the Domestic Relations Law, the order as entered is controlling upon this court and requires a dismissal of the petition. The effective date of article 5-A was September 1, 1978, and accordingly there have been no appellate pronouncements as yet. This then is a case of first impression* and a review of the applicable provisions of article 5-A is indicated.
Prior to the enactment of the Uniform Child Custody Jurisdiction Act the courts of the various States felt free to all but ignore prior custody adjudications of sister States, often made after prolonged hearings and detailed inquiry into the abilities of the respective parties to respond to the needs of the *949 children in question. Courts held repeatedly that the mere presence of children before them was sufficient to trigger jurisdiction so as to allow for a custody determination de novo unfettered by prior findings of other courts equally competent and equally concerned with the well-being of children. With the enactment of the Uniform Child Custody Jurisdiction Act —legislation much needed and most welcome — we in this State have moved into a more enlightened approach to this most difficult area of law. The case for uniformity in handling is probably best stated in the act itself: "The general purposes of this article are to: (a) avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being”. (Domestic Relations Law, § 75-b, subd 1.) Obviously, our courts in implementing this legislation must address this stated purpose to the end that custody disruptions are minimized, if not totally eliminated.
We would at the outset consider whether the Circuit Court of Wayne County had jurisdiction in the first instance. The uniform act envisions that it is the "Home state” which will pass on custody disputes. The "Home state” is defined as: "the state in which the child at the time of the commencement of the custody proceeding, has resided with his parents, a parent, or a person acting as parent, for at least six consecutive months.” (Domestic Relations Law, § 75-c, subd 5.) In this case the custodial parent and the child were residents of the State of Michigan for some six years prior to the onset of proceedings in that State. There is little question but that the Circuit Court in Michigan properly exercised its jurisdiction. Does this have the effect then of precluding our courts from assuming jurisdiction under any and all circumstances? Obviously, the answer must be in the negative and indeed section 75-d outlines instances in which jurisdiction may attach. In relating the provisions of section 75-d to the case at hand, however, only subdivision 1 (par [c], cl [ii]) would seem to have any applicability.
"§ 75-d. Jurisdiction to make child custody determinations.
"1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree only when: * * *
"(c) the child is physically present in this state and * * * (ii) *950 it is necessary in an emergency to protect the child”. Do we have here presented within the meaning of the statute such an emergency as would require this court to intervene in order to protect the child in question? I think not.
The court has received a report from the Law Guardian appointed at the time the petition was filed. He interviewed the child, who indicated that he prefers to reside with his natural mother and a brother and sister presently in the household. The child advised that he was unhappy residing in Michigan, that the custodial mother was not well and could not properly care for him. It was recommended by the Law Guardian that in view of those circumstances, this court should assume jurisdiction and proceed to a determination of custody in the best interests of the child. But the question this court is called upon to decide at this time is not whether custody of the child should be with the biological parent or with the custodial parent. I here deal with a much narrower issue. Should this court, despite the mandate of article 5-A, substitute its judgment for that exercised by the court of another State? The State of Michigan has adopted the Uniform Child Custody Jurisdiction Act. We will in the future expect that the courts of that State honor custody decrees out of this State, just as they have a right to expect that we will honor their decrees. What purpose would be served by our inquiring anew into the custody adjudications of other States? The mandate of the act is clear. Absent the necessity for crisis intervention, the custody decrees of sister States entered pursuant to the Uniform Child Custody Jurisdiction Act must be enforced. I do not find there is a crisis situation before me and, accordingly, the decree of the Circuit Court of Michigan will be enforced. Only one court should make a custody determination and that determination should not be challenged merely because the child is brought to another State. (See Nehra v Uhlar, 43 NY2d 242.) Any other view would negate completely the adoption of the Uniform Child Custody Jurisdiction Act. We cannot allow this to happen; there is too much at stake.
While holding that the Michigan decree must be enforced, I am at the same time concerned that the Michigan court did not respond to an inquiry by this court and did not hold its proceeding in abeyance pending my passing on the jurisdictional question before me. It may be that the mother’s default in Michigan was occasioned by a misunderstanding with re *951 gard to the effect of the petition she filed here. In any event, in view of the action we have taken herein, I must assume that the Michigan court will afford to the petitioner mother an opportunity to be heard to the end that all relevant testimony will be laid before that court and a determination on the merits had. It seems to me that due process would require nothing less.
In view of the above, the motion to dismiss is granted, and the petitioner is directed to return the child to the respondent in Detroit, Michigan, forthwith.

 Inn v Inn (93 Misc 2d 1110) was decided in April of 1978 prior to effective date of article 5-A.