The PEOPLE of the State of Colorado, Petitioner-Appellant,

In the Interest of D. L. E., a Child, Appellant through his Guardian ad Litem, Appellee through his Attorney,

and Concerning: J. E., Respondent-Appellee.

No. 80SA497.

Supreme Court of Colorado, En Banc.

May 10, 1982.

Rehearing Denied June 1, 1982.

Gerald J. Ashby, City County Atty; Bourtai Hargrove, Asst. City County Atty., Grand Junction, for petitioner-appellant.

William M. Kane, Grand Junction, for D. L. E.

Robert L. Goodbinder, Grand Junction, guardian ad litem.

Richard A. Brown, Colo. Rural Legal Services, Inc., Grand Junction, for respondent-appellee.

ERICKSON, Justice.

The principal question before us on appeal is whether the District Court of Mesa County erred in failing to adjudicate D. L. E. a dependent and neglected child pursuant to sections 19–1–103(20)(d) and (e), C.R.S.1973 (1978 Repl.Vol. 8). Because of D. L. E.'s continued refusal, on religious grounds, to take medication to control his epileptic condition, his life is in imminent danger. The Mesa County Department of Social Services has appealed the order of the district court and we reverse.

## I.

As a result of brain damage occurring at birth, D. L. E. has experienced a series of grand mal epileptic seizures. On religious grounds tied to her membership in the General Assembly and Church of the First Born, D. L. E.'s adoptive mother, J. E., has refused to comply with a program of medical treatment for D. L. E. Various religious tenets of the sect eschew medical care or treatment and provide for faith healing. Neither D. L. E. nor his mother believes that medical treatment is warranted for his condition. They both believe that prayer and assistance by church elders will improve his condition.

On February 2, 1978, when D. L. E. was twelve years old, the Mesa County Department of Social Services (Department) filed a petition alleging that D. L. E. was dependent and neglected because his mother refused to provide medical care necessary for his health and well-being. D. L. E. and his mother asserted their right to religious freedom as a defense to the Department's dependency petition. *See U.S.Const.* amend. I; *Colo.Const.* art. II, sec. 4. The District Court of Mesa County, acting in its capacity as a juvenile court, held a disposi-

tional hearing and adjudicated D. L. E. a dependent child under sections 19–1–103(20)(d) and (e), C.R.S.1973 (1978 Repl. Vol. 8) (section 103) which provides:

" 'Neglected or dependent child' or 'dependent or neglected child' means a child:

\* \* \* \* \* \*

"(d) Whose parent, guardian, or legal custodian fails or refuses to provide proper or necessary subsistence, education, medical care, or any other care necessary for his health, guidance, or well-being;

"(e) Who is homeless, without proper care, or not domiciled with his parent, guardian, or legal custodian through no fault of such parent, guardian, or legal custodian."

Accordingly, on June 12, 1978, the court awarded the Department legal custody of D. L. E. with directions to arrange for his medical treatment. The treating physician prescribed Dilantin, an anti-convulsant medication, to control D. L. E.'s epileptic seizures.

D. L. E. thereafter appealed to this court and, on July 14, 1980, we reversed the district court judgment with directions to dismiss the petition alleging that D. L. E. was dependent and neglected. *People in the Interest of D. L. E.,* Colo., 614 P.2d 873 (1980) (*D. L. E.* I). Since we found no support in the record to show that D. L. E.'s life was in imminent danger through a lack of medical care, we declared that his right to refuse medical treatment on religious grounds was controlled by section 19–1–114, C.R.S.1973 (1978 Repl.Vol. 8) (section 114), which provides:

"Notwithstanding any other provision of this title, no child who in good faith is under treatment solely by spiritual means through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall, for that reason alone, be considered to have been neglected within the purview of this title."

Accordingly, we held that D. L. E. was not dependent or neglected within the meaning

of section 103. *People in the Interest of D. L. E., supra.*

D. L. E. initially complied with the orders relating to medical treatment, but on May 2, 1980, while the appeal in *D. L. E.* I was pending and contrary to medical advice, he abruptly stopped taking Dilantin.[1] As a result, he went into a state of status epilepticus with resulting dysfunction, including a stroke which caused permanent flaccid paralysis of his left arm and leg, a nerve injury which restricted movement in his right arm, a dislocated jaw, and continued seizure activity.[2] The results of an electroencephalograph (EEG) examination given in May 1980 indicated that, because of frequent focal seizures, the right side of D. L. E.'s brain was not functioning at least forty percent of the time. At a hearing in the district court on June 12, 1980, a physician testified that if D. L. E. suffered a focal seizure while eating, there was a reasonable medical probability that he would choke. The court found that continuing focal seizures could result in a life-threatening situation, and therefore ordered D. L. E. to resume taking his medication. During the pendency of the appeal of *D. L. E.* I, we were not advised of D. L. E.'s changed condition and the precipitating factors which lead to his grand mal seizures. Therefore, as a result of our decision in D. L. E. I, the order of the district court was voided.

Thereafter, the Department filed another petition in the District Court of Mesa County, alleging that: (1) D. L. E. is dependent and neglected because his mother fails and refuses to provide medical care necessary for his health and well-being and that his life is endangered; and (2) D. L. E. is a child in need of oversight, pursuant to section 19–1–103(5), C.R.S.1973 (1978 Repl.Vol. 8) (1981 Supp.), because his medical condition endangers his welfare. The court took judicial notice of the evidence, affidavits, and findings of the prior hearings in *D. L. E.* I, and D. L. E. and J. E. filed motions to dismiss the petition. On September 19, 1980, the court granted the motion to dismiss as to that portion of the petition alleging that D. L. E. was dependent and neglected.[3] The court recognized that our decision in *D. L. E.* I determined the validity of a defense to a dependency and neglect petition based on section 114, and held that section 114 was an absolute bar to a finding of dependency and neglect in this case, even though D. L. E.'s condition was life-endangering. The Department and D. L. E., through his guardian ad litem,[4] appealed. We reverse the order of the district court.

## II.

As a preliminary matter, we reject the argument of D. L. E., as appellee, and J. E. that the doctrine of *res judicata* or collateral estoppel should be invoked to bar a redetermination of the issues regarding dependency and neglect in this case. The dependency and neglect petition now before us is based upon events occurring from approximately May 1980 to the time the petition was filed in August 1980. Our decision in *D. L. E.* I was based solely upon the record of the district court's order on March 22, 1978. During the pendency of the appeal, the record was not supplemented with any documentation of D. L. E.'s aggravated medical condition after that date. Because

1. The execution of the district court's order adjudicating D. L. E. dependent and neglected was not stayed pending its appeal. Accordingly, its order requiring D. L. E. to undergo a program of medical treatment remained in effect during the appeal.

2. Status epilepticus is a state of continual seizures. Expert physician testimony at the initial hearing in the district court established that a state of status epilepticus in children may cause death due to a vascular swelling in the brain.

3. The court declined to dismiss that portion of the petition alleging that D. L. E. was in need of oversight, but reserved that issue for trial. On appeal, the parties do not challenge the court's order regarding the oversight petition and we consequently do not address the issue in this decision.

4. D. L. E., through his guardian ad litem, is joined with the Department as appellants in this action. D. L. E., through his attorney, is joined with J. E. as appellees in this action.

our decision in *D. L. E.* I voided the district court's order of June 12, 1978, there has been no final judicial determination of the new factual basis and legal issues arising out of the change in D. L. E.'s medical condition to a life-endangering situation. Accordingly, neither *res judicata* nor collateral estoppel bars our adjudication of the Department's petition based on the new facts which are before us. *See, e.g., People In Interest of D. A. K.,* 198 Colo. 11, 596 P.2d 747 (1979); *appeal dismissed, J. K. S. v. Colorado,* 444 U.S. 987, 100 S.Ct. 515, 62 L.Ed.2d 416 (1979); *Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396 (1973).

### III.

We have not previously determined whether a finding of dependency and neglect is precluded by section 114 when the child's life is in imminent danger as a result of his failure to comply with a program of medical treatment on bona fide and sincere religious grounds.[5] *Cf., Goedecke v. Department of Institutions,* 198 Colo. 407, 603 P.2d 123 (1979). In addressing the applicability of section 114 to this case, the district court concluded:

> "There is no possible room for, no mode of logic that allows an exception to be carved out of § 19-1-114 for a child whose life is endangered or whose physical and mental condition would be impaired as a result of the denial of medical treatment where that denial is based on the spiritual beliefs of the child and the parent."

We do not agree with the conclusion of the district court.

Statutes should be interpreted, if possible, to harmonize and give meaning to other potentially conflicting statutes. In doing so, we must give effect to each clause and section of the statute, section 2–4–201(b), C.R.S.1973, as well as to the legislative intent as expressed in the purpose of the statute as a whole. Section 2–4–203(g), C.R.S.1973. *See also Armstrong v. Simonson,* 84 Colo. 472, 271 P. 627 (1928); *Denver v. Campbell,* 33 Colo. 162, 80 P. 142 (1905). The purpose of the Children's Code is to secure for each child the care and guidance which best serves his welfare and the interests of society. Section 19–1–102, C.R.S. 1973 (1978 Repl.Vol. 8). *See also Denver v. Juvenile Court,* 182 Colo. 157, 511 P.2d 898 (1973). Under the facts of this case, the purpose of the Children's Code can be reconciled with the express language of section 114.

■ We believe that section 114 does not provide an absolute defense to a finding of dependency and neglect when the child's life is in imminent danger as a result of a failure to comply with a program of medical treatment on religious grounds. Section 114 provides in pertinent part:

> "[N]o child who in good faith is under treatment solely by spiritual means ... shall, *for that reason alone,* be considered to have been neglected...." (Emphasis added.)

In our view, the meaning of the statutory language, "for that reason alone," is quite clear. It allows a finding of dependency and neglect[6] for other "reasons," such as where the child's life is in imminent danger, despite any treatment by spiritual means. In other words, a child who is treated solely by spiritual means is not, for that reason alone, dependent or neglected, but if there

---

5. In *D. L. E.* I, we expressly declined to address this issue:

"[W]e need not consider whether a finding of dependency or neglect would be precluded by section 19-1-114 where a minor's life was in imminent danger due to a lack of medical treatment." *People in the Interest of D. L. E.,* Colo., 614 P.2d 873 (1980).

The applicability and validity of section 114 as a defense to a dependency and neglect petition was, however, upheld in our decision in *D. L. E.* I. We therefore decline to address the Depart-

ment's constitutional challenges to section 114 under the facts of this case.

6. In *D. L. E.* I, we held that, although section 114 states only that a child shall not be found neglected under its provisions, there is no distinction between a finding of dependency and neglect. *People in the Interest of D. L. E.,* Colo., 614 P.2d 873 (1980). *See also People In Interest of D. A. K.,* 198 Colo. 11, 596 P.2d 747 (1979); *Denver v. Juvenile Court,* 182 Colo. 157, 511 P.2d 898 (1973); *Jones v. Koulos,* 142 Colo. 92, 349 P.2d 704 (1960).

is an additional reason, such as where the child is deprived of medical care necessary to prevent a life-endangering condition, the child may be adjudicated dependent and neglected under the statutory scheme.

It is undisputed under the facts of this case that D. L. E.'s medical condition substantially worsened and became life-threatening after he stopped taking Dilantin to control his epileptic seizures in May 1980. As we discussed in part I of this opinion, D. L. E. suffered severe physical impairment as a result of his status epilepticus. The affidavits of the three physicians treating D. L. E. at the time all indicated that D. L. E. suffered severe physical and psychological damage from uncontrolled and continuous seizure activity. Without medication, there is a reasonable medical probability that D. L. E. will have both multiple focal seizures and generalized grand mal seizures with concomitant brain impairment; further brain damage would result in increased weakness of D. L. E.'s body and a greater lack of motor coordination. On June 10, 1980, Dr. Burnbaum, one of the examining physicians, stated in his report to the court:

"Let me say that [D. L. E.] right now is not doing well. He is having frequent focal seizures in front of me, and in fact, over a period of an hour, he had about 10 focal seizures, each lasting about 30 seconds. I also reviewed his EEG and over a 20 minute period, about 40% of the record is taken up with seizure activity. That is, the right brain is effectively not functioning at least 40% of the time. I do feel that the only way we may be able to get him on medication would be either to take him out of the home or to have visiting nurse come to the home and make sure he gets the medication. If things continue as they are going, I cannot imagine that his mental status can be anything but markedly impaired with the continued seizure activity, and I do not believe that the continued seizure activity is due just to withdrawal from medication but rather, due to lack of medi-

cation. In addition, I would think that more than likely, there is going to be further brain damage from the continued seizure activity, and I would anticipate generalized seizures in addition to the focal seizures. He may run into problems with the generalized seizures such as injuries due to falls and possibly even aspiration. In addition, the right arm is extremely weak, and apparently the child has never been to see anybody about this. This may well be secondary to a brachio-plexus injury, perhaps experienced at the time of his multiple seizures earlier last month."

Under the circumstances, there is ample evidence in the record to support the trial court's conclusion that D. L. E.'s condition is life-endangering. Accordingly, we hold that section 114 does not preclude a finding that D. L. E. is dependent and neglected due to his mother's refusal to comply with a program of medical treatment.

## IV.

We do not agree with D. L. E. or his mother's contention that an interpretation of section 114 to allow conventional medical treatment in this case violates the Free Exercise of Religion Clauses of the First Amendment of the United States Constitution,[7] as applied to the states through the Due Process Clause of the Fourteenth Amendment, and of Article II, section 4 of the Colorado Constitution. We recognize that the United States Supreme Court has placed a heavy burden upon the state and the courts to justify any infringement of an individual's First Amendment freedoms. *See, e.g., Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (state interference with religious practices is warranted only when the practice constitutes a substantial threat to public safety, peace or order).

However, the family itself is not beyond regulation in the public interest as

---

7. The first amendment to the United States Constitution provides in pertinent part:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ."

against a claim of religious liberty, and neither the rights of religion nor rights of parenthood are beyond limitation. *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944). *See also, Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1878). Acting to guard the general interest in the youth's well being, the authority of the state, as *parens patriae*, is not nullified merely because a parent grounds his claim to control the child's course of conduct on religion or conscience. *Prince v. Massachusetts, supra.* The right to practice religion freely does not include the right or liberty to expose the community or the child to ill health or death. *Id.* In *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the United States Supreme Court held:

> "[T]o agree that religiously grounded conduct must often be subject to the broad police power of the State is not to deny that there are areas of conduct protected by the Free Exercise Clause of the First Amendment and thus beyond the power of the State to control, even under regulations of general applicability."

> \* \* \* \* \* \*

> "[But] the power of the parent, even when linked to a free exercise claim, may be subject to limitation under *Prince* if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens." 406 U.S. at 133–34, 92 S.Ct. at 1542.

In light of *Wisconsin v. Yoder, supra,* various state courts have concluded that a parent's election against medical treatment for a child is not absolute in a life-endangering situation. In *Muhlenberg Hospital v. Patterson*, 128 N.J.Super. 498, 320 A.2d 518 (1974), the court held:

> "The Courts have been and will continue to be the guardian of the religious rights of the individuals to see that this power of the State is not exercised beyond the area where treatment is necessary for the sustaining of life or the prevention of grievous bodily injury." 320 A.2d at 521.

*See also In re Green*, 448 Pa. 338, 292 A.2d 387 (1972) (the state may intervene only if the child's life is immediately imperiled by his physical condition, at least where the child himself opposes the treatment). *See generally People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 104 N.E.2d 769 (1952); *Mitchell v. Davis*, 205 S.W.2d 812 (Tex.Civ.App. 1947).

We believe that it is constitutionally permissible to adopt a similar formulation under the facts of this case for the resolution of D. L. E.'s dependency dispute. We therefore conclude that, at least where a minor suffers from a life-threatening medical condition due to a failure to comply with a program of medical treatment on religious grounds, section 114 permits a finding of dependency and neglect and does not violate the constitutional provisions protecting the free exercise of religion.

Accordingly, the judgment of the district court is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.