DEPARTMENT OF SOCIAL SERVICES OF the CITY AND COUNTY OF DENVER and Hamilton County, Ohio, Department of Human Services, Petitioners,

v.

DISTRICT COURT OF THE EIGHTEENTH JUDICIAL DISTRICT, and the Honorable Richard L. Kaylor, One of the Judges Thereof, Respondents.

No. 87SA157.

Supreme Court of Colorado, En Banc.

Sept. 14, 1987.

nothing more than speculation as to the cause of the loss of the evidence.

Stephen H. Kaplan, City Atty., Frank Elzi, Lynn W. Lehmann, Asst. City Attys., Denver, for petitioner Dept. of Social Services of the City and County of Denver.

Fasing and Fasing, P.C., Gregory J. Fasing, Denver, for petitioner Hamilton County, Ohio, Dept. of Human Services.

Martin A. Mansfield, Jr., P.C., Martin A. Mansfield, Jr., Englewood, guardian ad litem.

Shari F. Shink, Denver, guardian ad litem.

David T. Goens, Denver, for J.E.J.

VOLLACK, Justice.

This is an original proceeding under C.A.R. 21 in which the petitioners, the Department of Social Services of the City and County of Denver [hereinafter DSS], and Hamilton County, Ohio, Department of Human Services [hereinafter HCDHS], seek relief in the nature of prohibition against the respondent court in connection with its exercise of jurisdiction to enjoin HCDHS from transferring two children under its legal custodianship back to Ohio under the Interstate Compact on Placement of Children [hereinafter Interstate Compact], sections 24–60–1801 to –1803, 10 C.R.S. (1982). We issued a rule to show cause and now make the rule absolute.

I.

The dispute in this case arises out of the interstate placement of three children, S.C., K.C., and B.C. The two states involved are Ohio, the jurisdiction in which the children were originally adjudicated dependent or neglected, and Colorado, where the children have lived since 1982.[1]

In September of 1981, the three children were adjudicated dependent or neglected in the court of common pleas of Hamilton County, Ohio. Parental rights were terminated and HCDHS became the children's legal custodian. In 1981, B.C. was two months old, K.C. was one year old, and S.C. was aged three. The children were available for adoption and registered with the National Adoption Exchange. Through the Interstate Compact, a uniform law enacted by most jurisdictions in the United States,[2] the children were placed with J.E.J., who lived in Aurora, Colorado, at the time of the placement. A privately licensed social service agency, Adoption Option, supervised the preadoptive placement under contract with HCDHS. In 1983, J.E.J. initiated adoption proceedings in the Arapahoe County District Court, and on May 10, 1983, said court approved the preadoptive placement of the children with J.E.J., with a final adoption hearing scheduled for September 14, 1983. The petitioners contend that these proceedings were initiated without HCDHS' participation. On September 3, 1983, while in the custody of J.E.J., B.C. died of unknown and allegedly nonaccidental causes.[3] As a result, Adoption Option requested a postponement of the final adoption of K.C. and S.C.

The status of the two adoption petitions for S.C. and K.C. is contested. DSS and HCDHS contend that the petitions were dismissed on May 23, 1986, "pursuant to court order." J.E.J. and the guardian ad litem appointed by the Arapahoe court, Martin Mansfield [hereinafter Mansfield], claim that an entry of dismissal was made by the clerk of the court, but that Adoption Option requested a continuance. J.E.J. and Mansfield contend that the clerk entered a minute order of dismissal on May 23, but that the order was not signed by the court and the order was filed with the notation "file unsigned." DSS received a referral from HCDHS to investigate possible child abuse of K.C. and S.C. In September 1986, J.E.J. filed a motion in Arapahoe County District Court to reopen the adoption proceedings. On November 18, 1986, K.C. and

1. The facts herein recited are taken from the briefs submitted by the petitioners and by J.E.J. and two guardians ad litem, there being no record of the proceedings from the lower court before this court.

2. To date only two states have not enacted the Interstate Compact on Placement of Children: Hawaii and New Jersey.

3. The Arapahoe County District Court entered a posthumous final decree of adoption to J.E.J. of B.C. on September 14, 1983.

S.C. were removed from J.E.J.'s home and placed with DSS, allegedly in response to a letter written by J.E.J.'s brother stating that J.E.J. abused the children and had caused the death of B.C. The children were placed in foster care. Since that time, K.C. has required residential psychiatric care.

On February 2, 1987, the juvenile division of the court of common pleas of Hamilton County, Ohio, issued an order setting a hearing on February 23, 1987, to decide whether HCDHS' plan to transfer the children back to Cincinnati from Denver should or should not be approved. Notice of the hearing was sent to J.E.J.'s attorney, but there was no appearance made at the Ohio hearing on J.E.J.'s behalf. The Hamilton County court approved the plan to transfer the children back to Ohio. On March 6, 1987, J.E.J. filed a motion in the Arapahoe County District Court to enjoin HCDHS from transferring the children back to Ohio. At hearings held in response to the motion, the district court heard testimony from J.E.J., her psychologist, and social workers from Denver and Hamilton County. At the conclusion of the hearing, the respondent court found that it had continuing jurisdiction over the minor children, and that it was in the children's best interests to stay in Colorado.

Based upon our interpretation of the Interstate Compact, the Ohio court's continuing jurisdiction, and HCDHS's withdrawal of its consent to the placement of K.C. and S.C. with J.E.J., we find that the district court is without jurisdiction to enter protective orders concerning the two children.

## II.

J.E.J. and Mansfield contend that the respondent court has exclusive jurisdiction over the placement of the children. Section 19–1–104 of the Children's Code states: "*Except as otherwise provided by law*, the juvenile court shall have exclusive original jurisdiction in proceedings ... [f]or the adoption of a person of any age." 8B C.R.S. (1986) (emphasis added).[4] We have

held that the juvenile court has the power and the duty to make appropriate determinations regarding the custody and care of a child adjudicated to be within its exclusive jurisdiction. *City & County of Denver v. Juvenile Court*, 182 Colo. 157, 163, 511 P.2d 898, 901 (1973). In addition, we stated:

> "In this jurisdiction it has long been held that every child is under the control of the state, and even the paternal right to its custody and control must yield to the interest and welfare of the child, and that the paramount and controlling question by which courts must be guided in proceedings affecting the custody of the infant is the interest and welfare of the child."

*Id.* at 161–62, 511 P.2d at 900 (quoting *People v. Bolton*, 27 Colo.App. 39, 146 P. 489 (1915)).

Within this framework, we must place the Interstate Compact, sections 24–60–1801 to –1803, 10 C.R.S. (1982). The policy behind the compact is for party states "to cooperate with each other in the interstate placement of children."

Article V of the Interstate Compact states:

> The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, *until the child is adopted*, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state. *Such jurisdiction shall also include the power to effect or cause the return of the child or its transfer to another location and custody pursuant to law.*

§ 24–60–1802, 10 C.R.S. (1982) (emphasis added). Statutory words and phrases should be given effect according to their plain and ordinary meaning. *People v. District Court*, 713 P.2d 918 (Colo.1986). The

---

4. Section 19–1–103(18) states: "Juvenile court" or "court" means ... the juvenile division of the

district court outside of the city and county of Denver. 19–1–103(18), 8B C.R.S. (1986).

enactment of the Interstate Compact limits the jurisdiction of the juvenile court for interstate adoptions as an exception "otherwise provided by law." Any other interpretation would abrogate the purpose of the compact. The language of the Interstate Compact clearly states that the sending agency retains jurisdiction until the child is adopted. The mere filing of an adoption petition is not sufficient to divest the sending agency of jurisdiction.

HCDHS submitted a plan to the Ohio court for the return of the children from Colorado. The Ohio court entered orders approving the plan for the children's return. It should not be overlooked that J.F.J. had notice of the Ohio proceedings and knew the subject matter of those proceedings. Her failure to appear or even respond to that notice does not create a right to ignore the Ohio court's order and seek to circumvent it by applying to the courts of this state.

The parties in opposition to this petition contend that the adoption petitions before the Colorado court were never properly dismissed because the order for dismissal was never signed by the court. The facts before this court are not sufficient for us to determine whether the petitions were in fact dismissed. However, it is unnecessary for us to address this issue because it is irrelevant to the determination of jurisdiction because of the continuing jurisdiction of the Ohio court and the withdrawal of consent to the adoption by HCDHS. The district court was without jurisdiction to enter protective orders in this case.

Consent is necessary in all adoptions, since without a valid consent courts are without jurisdiction to enter a decree of adoption. *Batton v. Massar*, 149 Colo. 404, 369 P.2d 434 (1962). Once that consent has been withdrawn, the court is divested of jurisdiction. Where, as here, no final adoption decree has been entered, an agency can withdraw its consent. In the instant case, the preadoptive placement was approved by HCDHS to determine the suitability of J.E.J. as an adoptive mother for the children. The filing of an adoption petition by J.E.J. did not strip HCDHS of the power to reject her as an adoptive parent. HCDHS remains the children's legal custodian until such time as they are adopted.

The rule to show cause is made absolute.

MULLARKEY, J., specially concurs, and ROVIRA, J., joins in the concurrence.

MULLARKEY, Justice, specially concurring:

I concur in the decision making the rule absolute. However, rather than sending the children to Ohio immediately, I would stay their return and follow the procedure developed by this court in *Roberts v. District Court*, 198 Colo. 79, 596 P.2d 65, 69 (1979), and *Fry v. Ball*, 190 Colo. 128, 544 P.2d 402, 407–08 (1975).

I agree with the majority that Ohio retains primary jurisdiction over the children. *See* Article V of the Interstate Compact on Placement of Children, § 24–60–1802, 10 C.R.S. (1982). *See also* § 14–13–107(1), 6 C.R.S. (1973) (Uniform Child Custody Jurisdiction Act or UCCJA). However, the record before this court suggests that the Hamilton County Court of Common Pleas acted without complete information and failed to give thorough consideration to the best interests of the children. In light of Ohio's apparent failure to hold a "best interests" hearing, it is arguable that Colorado need not give full faith and credit to the Ohio court's order that the children be returned to Ohio. *See E.E.B. v. D.A.*, 89 N.J. 595, 446 A.2d 871 (1982), *cert. denied*, 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 445 (1983) (holding that New Jersey court properly refused to give full faith and credit to Ohio decree ordering return of child when Ohio court failed to conduct a "best interests" hearing).

The record suggests that the Ohio court did not have the benefit of the medical, psychological, and other testimony available to the Arapahoe County District Court, nor did it hear testimony of the children, their guardians ad litem, or J.E.J. The record before this court includes recommendations by Bert S. Furmansky, M.D., Leon Stutzman, ACSW, Jonathan F.

Esty, Ph.D., Sidney Werkman, M.D., Roy R. Fowles, Ph.D., and both guardians ad litem that the children be allowed to remain in Colorado and to continue their contact with J.E.J. These experts stated that further uprooting could have a "deleterious effect" on K.C. and "would be expected to extend residential treatment for a significant period of time." There is no evidence that the children would benefit from being returned to Ohio at this time. This testimony might be significant to the Ohio court's decision about how best to exercise its jurisdiction over these children.

When faced with similar situations in *Fry* and *Roberts,* this court exercised its equity powers to allow the children in question to remain in Colorado temporarily, while their Colorado guardians petitioned the out-of-state courts for modification of their custody decrees. This procedure allowed the other states to have the benefit of information most readily available in Colorado, minimized the interference to the children's lives, and gave proper deference to the other state's jurisdiction. This approach, which results in compliance with both the letter and spirit of the UCCJA, has been adopted by at least one other state and has received favorable comment. *See In re Mullins,* 298 N.W.2d 56, 61–62 (Minn.1980); Bodenheimer, *Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications,* 65 Cal.L.Rev. 978, 990–92 (1977); *see also* Note, *Temporary Custody Under the Uniform Child Custody Jurisdiction Act: Influence Without Modification,* 48 U.Colo.L.Rev. 603, 612–14 (1976–77).

The experts' recommendations in this case make it a stronger case than either *Fry* or *Roberts.* Here, in addition to the general equity powers of the court, the emergency jurisdiction of UCCJA section 14–13–104(1)(c), 6 C.R.S. (1973) also applies.

Therefore, I would stay the children's return to Ohio for ten days to allow J.E.J. or the children's guardians ad litem to file written notice of intent to petition the Ohio court for modification of the Hamilton County, Ohio, Department of Human Services' plan to remove the children from Colorado. If such notice were filed, I would then grant an additional twenty days for J.E.J. or the guardians ad litem to actually file a petition with the Ohio court. If no such petition were filed, the respondent court would dissolve the stay.

If a petition were filed, the Colorado courts would stand ready to assist the Ohio courts, consistent with the letter and spirit of the UCCJA. Such assistance could include conducting the "best interests" hearing in Colorado pursuant to UCCJA section 14–13–119, 6 C.R.S. (1973). The children would remain in Colorado until the respondent court was notified that Ohio had made a final decision on the petition for modification, at which time the stay would be dissolved and the respondent court would recognize the Ohio court's decree.

I am authorized to state that JUSTICE ROVIRA joins in this special concurrence.