**Julie Ann NISTICO, Petitioner,**

v.

**DISTRICT COURT, COUNTY OF MONTROSE, STATE OF COLORADO, Judge Lincoln, Presiding, Respondent.**

**No. 89SA480.**

Supreme Court of Colorado,
En Banc.

May 29, 1990.

Doty, Johnson & Shapiro, Bruce R. Johnson, Boulder, for petitioner.

Mathis & Masters, P.C., Anne T. Harper, Montrose, for Michael David Nelson.

Justice VOLLACK delivered the Opinion of the Court.

Julie Ann Nistico (Nistico) petitions for relief pursuant to C.A.R. 21 from the order of the District Court for the County of Montrose (the district court)[1] denying Nistico's motion to dismiss for lack of subject matter jurisdiction. We issued a rule to show cause and now make the rule absolute.

I.

Michael David Nelson (Nelson) filed in the district court a petition under the Uniform Parentage Act, §§ 19–4–101 to 19–4–129, 8B C.R.S. (Supp.1989) (the Parentage Act), for a determination and order relating to the parentage, custody, visitation, support, and other rights, privileges, duties, and obligations of the parties relating to the child J.M.N. Nelson's petition alleges that J.M.N. was conceived in Colorado and born on July 21, 1988, in Los Angeles, California. The petition further alleges that J.M.N. currently resides with Nistico in Apple Valley, California. Nistico was personally served with the petition in Costa Mesa, California. Nistico filed in the district court an answer under the Parentage Act which admits all of the allegations of Nelson's petition except the allegation of J.M.N.'s present address. Nistico admits that Nelson is the father of J.M.N. Nisti-

---

1. Nelson began this action in the Montrose County District Court, which was sitting as a juvenile court under § 19–1–103(17), 8B C.R.S. (Supp.1989). For the sake of convenience we refer to that court as the district court.

co's answer affirmatively states that Nistico has incurred expenses in connection with Nistico's pregnancy and the birth of J.M.N., that Nelson should be responsible for certain past and future support obligations, and that Nistico should have sole custody of J.M.N. Nelson filed a reply to the affirmative statements in Nistico's answer.

Nistico then filed a motion to dismiss for lack of subject matter jurisdiction. The district court issued a minute order denying Nistico's motion to dismiss and ordering the case set for a hearing. Before the hearing was held, Nistico filed a petition for relief pursuant to C.A.R. 21 in this court, and we issued a rule to show cause.

## II.

Because Nistico has admitted Nelson's allegation that he is the father of the child, the disputed issues of fact in this case concern J.M.N.'s custody, the parties' visitation rights, and their support obligations. These disputed issues are intimately related to J.M.N.'s best interests. We resolve the jurisdictional controversy between the parties under the applicable statute, the Uniform Child Custody Jurisdiction Act (the UCCJA), §§ 14–13–101 to 14–13–126, 6B C.R.S. (1987), which was enacted primarily to determine custodial jurisdictional questions in the child's best interest. We examine section 19–1–104, 8B C.R.S. (Supp. 1989) (juvenile court jurisdiction), and the UCCJA to determine whether the district court properly exercised jurisdiction over the custody dispute between Nistico and Nelson.

### A. Section 19–1–104

Section 19–1–104 provides that:

(1) *Except as otherwise provided by law,* the juvenile court shall have exclusive jurisdiction in proceedings:

. . . .

(c) To determine the legal custody of any child or to appoint a guardian of the person or legal custodian of any child

who comes within the juvenile court's jurisdiction under provisions of this section;

. . . .

(e) For the issuance of orders of support under Article 6 of this title;

(f) To determine the parentage of a child and to make an order of support in connection therewith[.]

(Emphasis added). The phrase "[e]xcept as otherwise provided by law" indicates that the jurisdiction of the juvenile court is limited by other legislative enactments. *See Department of Social Servs. v. District Court,* 742 P.2d 339, 342 (Colo.1987). In *Department of Social Services,* we held that the Interstate Compact on Placement of Children limited the jurisdiction of the juvenile court under subsection 19–1–104(1) in actions involving interstate adoptions. Nelson's petition seeks an order determining the parent/child relationship between himself and J.M.N. and determining custody, visitation, and child support. Parentage having been conceded, Nelson's parental rights must yield to the interest and welfare of J.M.N. in holding proceedings affecting custody, visitation, and support in J.M.N.'s home state. *See City & County of Denver v. Juvenile Court,* 182 Colo. 157, 511 P.2d 898 (1973). Within the framework of this case we must determine whether the district court properly exercised jurisdiction over Nelson's petition under the provisions of section 14–13–104 of the UCCJA. *See Barden v. Blau,* 712 P.2d 481, 483 (Colo.1986); § 14–13–103(2) (definition of "custody determination").

### B. The UCCJA

The UCCJA outlines four alternative grounds for subject matter jurisdiction. Section 14–13–104 provides in relevant part:

(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination [2] by initial or modification decree if:

2. Subsection 14–13–103(2) states that " '[c]ustody determination' means a court decision and court orders and instructions providing for the

custody of a child, including visitation rights." Subsection 14–13–103(3) states that a " '[c]usto-

(a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding, and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships[.] [3]

Our examination of whether these provisions confer subject matter jurisdiction on the district court is guided by several well-established principles applicable to the UCCJA. "[T]he [petitioner] has the burden, after challenge, of establishing by competent evidence all facts essential to jurisdiction." *Clark v. Kendrick*, 670 P.2d 32, 34 (Colo.App.1983). The UCCJA contemplates that where there is concurrent jurisdiction, only one state should exercise jurisdiction. *See, e.g., Bakke v. District Court*, 719 P.2d 313, 319 (Colo.1986); *Barden*, 712 P.2d at 484; *Plas v. Superior Court*, 155 Cal.App.3d 1008, 1018, 202 Cal. Rptr. 490, 496 (1984); *Nehra v. Uhlar*, 43 N.Y.2d 242, 248, 401 N.Y.S.2d 168, 171, 372 N.E.2d 4, 6–7 (1977); *Irene R. v. Inez H.*, 96 Misc.2d 947, 950, 410 N.Y.S.2d 53, 55 (Fam.Ct.1978). We noted in *Bakke* that the UCCJA "has a number of purposes, including avoiding jurisdictional competition with other courts ... and discouraging continuing controversies over child custody." *Bakke*, 719 P.2d at 319–20; *see also Plas*, 155 Cal.App.3d at 1022, 202 Cal.Rptr. at 499; *Nehra*, 43 N.Y.2d at 249, 401 N.Y. S.2d at 172, 372 N.E.2d at 7–8 ("if the best interests of all children are to be served,

the abduction of children to avoid the effect of custody decrees must be deterred"); *Irene R.*, 96 Misc.2d at 948–49, 410 N.Y. S.2d at 54 ("[t]he general purposes of this article are to: ... avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being").

We have recognized that custody proceedings are in general designed to serve the best interest of the child. We noted in *Department of Social Services*, 742 P.2d at 341, that

"[i]n this jurisdiction it has long been held that every child is under the control of the state, and even the paternal right to its custody and control must yield to the interest and welfare of the child, and that the paramount and controlling question by which courts must be guided in proceedings affecting the custody of the infant is the interest and welfare of the child."

(Quoting *City & County of Denver*, 182 Colo. at 161–62, 511 P.2d at 900); *see also Bakke*, 719 P.2d at 320.

The UCCJA vests jurisdiction in the child's home state, or, alternatively, in the state best situated to assess the child's best interests. The comment to section 3 of the UCCJA, upon which section 14–13–104 is based, states that

[i]n the first place, a court in the child's home state has jurisdiction, and secondly, if there is no home state or the child and his family have equal or stronger ties with another state, a court in that state has jurisdiction. If this alternative test produces concurrent jurisdiction in more than one state, the mechanisms provided in sections 6 and 7 [subsections 14–13–107 and 14–13–108] are used to assure that only one state makes the custody decision.

---

dy proceeding' includes proceedings in which a custody determination is one of several issues."

**3.** Two other bases for jurisdiction identified in this section, § 14–13–104(1)(c) (abandonment or emergency jurisdiction) and § 14–13–104(1)(d) (other jurisdiction lacking), are clearly inapplicable to this case.

9(I) U.L.A. § 3 comment, at 144 (1988); *see also Barden,* 712 P.2d at 484; §§ 14–13–107 (simultaneous proceedings in other states) and 14–13–108 (inconvenient forum). This explanation is consistent with our prior holding that "[t]here are two separate and distinct inquiries which should be made in determining whether a Colorado district court should hear a child custody case filed under the U.C.C.J.A. The first is whether jurisdiction exists in this state, and the second is whether this state should exercise its jurisdiction." *McCarron v. District Court,* 671 P.2d 953, 955 (Colo.1983); *accord Bakke,* 719 P.2d at 317; *Barden,* 712 P.2d at 484.

California is J.M.N.'s home state. Subsection 14–13–103 defines "home state" as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months." The comment to section 3 of the UCCJA states that "[m]ost American children are integrated into an American community after living there six months; consequently this period of residence would seem to provide a reasonable criterion for identifying the established home." 9(I) U.L.A. § 3 comment, at 144; *see also Bakke,* 719 P.2d at 317. Both parties agree that Nistico moved to California in November of 1987 and has continued to reside there. J.M.N. was born in California on July 21, 1988, and has resided there since birth. Nelson does not argue that Colorado is the child's home state, and the record indicates that he could not sustain such an argument.

Subsection 14–13–104(1)(b) describes an alternative method of determining jurisdiction. That subsection provides that a court of this state may exercise jurisdiction if it is in the best interest of the child, "or the child and at least one contestant, have a significant connection with this state and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." Subsection 14–13–104(1)(b) is based on subsection 3(a)(2) of the UCCJA. 9(I) U.L.A. § 3, at 143–44.

The comment to subsection 3(a)(2) of the UCCJA states that it

was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state.

9(I) U.L.A. § 3 comment, at 145 (emphasis in original); *see also McCarron,* 671 P.2d at 957 ("[t]he purpose of section 14–13–104(1)(b) is to limit jurisdiction rather than to proliferate it"). Nelson's significant connections with Colorado are not disputed. Nelson has the burden of proof of establishing jurisdiction in a Colorado court, and therefore he must demonstrate that J.M.N. has a significant connection with Colorado, and that there is in Colorado substantial evidence concerning J.M.N.'s present or future care, protection, training, and personal relationships.

The record in this case suggests that California, not Colorado, is the state containing "substantial evidence concerning the child's present or future care, protection, training, and personal relationships." § 14–13–104(1)(b). This conclusion is supported by the fact that J.M.N. has lived in California since birth, and therefore the people who regularly come in contact with, and care for, J.M.N. are in California. Nistico states in her affidavit that "[t]he child has been integrated into the California community where [Nistico] presently live[s]." Nistico also states in her affidavit that "[s]ubstantially all of the persons who are familiar with the child and his living arrangements and treatment are residents of the state of California." Nistico's affidavit further alleges that she and J.M.N. have no significant connection with the state of Colorado and there ·is no sub-

stantial evidence concerning the child's present or future care, protection, training, and personal relationships; on the contrary, the significant connection is with the state of California, and all substantial evidence with respect to the child's situation is in California.

The record does not contain any suggestion that J.M.N. has significant connections to Colorado, or that there is in Colorado substantial evidence relative to J.M.N.'s present or future care, protection, training, and personal relationships. Indeed, New York courts presume that the "absence of children from a state for 18 months is a strong indicator that there is no longer significant access to relevant evidence in the state." *Caronna v. Caronna*, 141 Misc.2d 834, 836–37, 535 N.Y.S.2d 312, 313 (Fam.Ct.1988); *accord Steinman v. Steinman*, 80 A.D.2d 892, 893, 436 N.Y.S.2d 901, 902–03 (2d Dept.1981).

Nelson argues that Colorado has jurisdiction because Nelson's relatives live in Colorado. This argument is unpersuasive in light of the absence of evidence in the record that a strong relationship exists between Colorado and J.M.N., or J.M.N. and his relatives on Nelson's side of the family. *See Bakke*, 719 P.2d at 316–17; *Barden*, 712 P.2d at 484–85; *McCarron*, 671 P.2d at 956; *see also Joselit v. Joselit*, 375 Pa.Super. 203, 210–11, 544 A.2d 59, 62 (1988) (grandparents' place of residence not determinative where they were not parties and it did not appear they were responsible for the child's care). Jurisdictional determinations under subsection 14–13–104(1)(b) are governed by the best interest of the child, and the child's connections to the prospective forum state, rather than the best interests of the feuding parties, or the parties' connections to a prospective forum state. *See* 9(I) U.L.A. § 3 comment, at 145. Nelson has not met his burden of establishing all facts essential to the district court's jurisdiction under subsection 14–13–104(1)(b).

Courts in Colorado and other jurisdictions have issued similar holdings in custody cases in which one parent seeks to establish jurisdiction in a state in which the child and the other parent have not lived for at least six months. In *McCarron*, 671 P.2d at 956, we held that Colorado was the home state of a child who had lived in Colorado continuously for the preceding nine months, during which time the child attended an elementary school in Conifer, Colorado. In *In re Custody of Dunn*, 701 P.2d 158, 160 (Colo.App.1985), the court of appeals held that Colorado, and not Texas, had jurisdiction in a custody dispute between the natural mother of the child and the current stepmother of the child. In *Dunn* the stepmother and the child moved to Colorado and, six months later, the stepmother filed a petition for custody. *Id.* at 159. The court of appeals held that Colorado was the home state of the child, and that the child's contact with Texas had become slight. *Id.* at 160.[4] In *Olivia H. v. John H.*, 130 Misc.2d 756, 497 N.Y.S.2d 838 (Fam.Ct.1986), the court held that New York had jurisdiction under the UCCJA. The court held that New York was the child's home state because she had resided there "some fifteen months, more than twice the requisite six consecutive months," and that New York had jurisdiction due to the child's significant connections with New York and the substantial evidence in New York concerning the child's present and future care and relationships. *Id.* at 757–58, 497 N.Y.S.2d at 840. *See also Silver v. Silver*, 100 A.D.2d 543, 543–44, 473 N.Y.S.2d 240, 241–42 (2d Dept.1984) (New York was child's home state and child had significant connections with New York, and thus New York had jurisdiction despite the fact that child's mother and two sisters continued to reside in Arizona); *Haag v. Haag*, 97 A.D.2d 833, 834, 469 N.Y.S.2d 15, 16 (2d Dept.1983); *Lansford v. Lansford*, 96 A.D.2d 832, 833–34, 465 N.Y.S.2d 583, 586 (2d Dept.1983) (New York had jurisdiction because the "wife and the child had lived in New York

---

**4.** The court found additional support for its decision in the fact that the relevant Texas statute did not permit "significant connection" jurisdiction where another state has home state jurisdiction. *Id.*

together for at least six consecutive months" and "the child and the wife [had] significant connections with [New York] and there [was] within [New York] substantial evidence concerning the child's present or future care, protection, training, and personal relationships").

The district court does not have jurisdiction under the UCCJA to determine issues of custody or visitation in this case. The rule to show cause is made absolute.